PLAINVILLE BRICK COMPANY *v.* WILLIAMS *et al.*

No. 7071.   FEBRUARY 19, 1930.

*C. L. Padgett* and *George G. Finch,* for plaintiff.

*McElreath & Scott, E. H. Sheats,* and *J. H. Porter,* for defendants.

RUSSELL, C. J. It can clearly be seen from the statement of facts that there is but one real issue in this case. The correctness of the ruling of the judge of the trial court, which is challenged in the bill of exceptions, depends upon whether the power of sale embodied in the security deed executed by J. I. Hembree to J. T. Williams was fairly exercised within the provisions of section 4620 of the Civil Code of 1910. The code section was originally of judicial origin, and its language was taken from the decision in *Calloway* v. *Peoples Bank,* 54 *Ga.* 441, in which the opinion of the court was delivered by Judge McCay, with whom Chief Justice Warner and Judge Trippe concurred. The ruling in that case that a power to a mortgagee to sell property mortgaged on failure of the mortgagor to pay the debt at its maturity is a lawful power and is irrevocable, and this power may be exercised against the mortgagor and those claiming under him either by deed or as purchasers at a judicial sale under process to which the mortgage is superior in its lien, was based upon the decision of this court in *Robenson* v. *Vason,* 37 *Ga.* 66, in which Chief Justice Warner delivered the opinion: "As a general proposition, the power to mortgage would seem to include in it a power to authorize the mortgagee to sell, on default of payment. Wilson *v.* Troup, 7th John. Chan. Rep. 32. In this case there is an *express* power given by the mortgagor to the mortgagee, or his assignee, to sell the mortgaged property in default of payment, upon giving thirty days notice." The provisions of section 4620, first entered in the Code of 1873, have appeared in all subsequent Codes. It was insisted in the argument of this case that the power of sale in the security deed from Hembree to Williams was not exercised in good faith or according to the terms of the power; that the advertisement of valuable real estate in Atlanta in a suburban newspaper on the extreme border-line of Fulton County, and the sale in accordance with the advertisement being conducted on a day

different from the lawful sale day (the first Tuesday of the month), evidenced an intent on the part of the grantee in the security deed to keep bidders away and to buy in the property at his own sale "for a song." As to these contentions we can only say, as Judge McCay did in the *Calloway* case, supra, that there is nothing to prevent a power of sale,—"We see nothing in the Code to limit the power of contracting as is contended for. Men have a right to do with their own as they will, and the law ought not be construed to limit that right, unless it be very plain. 'Consensus facit legem' is one of the most ancient and universal maxims of the law. Since it is not the object of society to limit men in the disposition they see fit to make of their own property, unless some decided public good is to be obtained." It is further insisted by the plaintiff that the advertisement of the property as made by Williams, the holder of the security deed, did not comply with or fulfill the terms prescribed in the power of sale. The decision of this point is not altogether free from difficulty, by reason of the fact that this court has in some cases applied the provisions of section 6063 of the Code relating to judicial sales in cases where the provisions as to advertisement of sale were stated in the power of sale embodied in the contract. After mature consideration of this matter we are satisfied that any apparent conflict is in fact much more apparent than real, and that the decisions can be harmonized in their application to the power of sale now before us. The provision as to sale as contained in the security deed from Hembree to Williams. is as follows: "And the party of the first part further covenants and agrees that in case the debt hereby secured shall not be paid when it becomes due . . as above provided, the party of the second part, or assigns, may . . sell the said property at auction at the usual place for conducting sales at the court-house in the county where the land lies, . . to the highest bidder for cash, first giving four weeks notice of the time, terms, and place of such sale, by advertisement once a week in a newspaper published in said county, all other notice being hereby waived, . . and said second party . . may bid and purchase at such sale." The question in the case is what is meant by giving four weeks notice of the time, terms, and place of sale by advertisement once a week in a newspaper, etc. If the provision relating to advertising had been

merely giving four weeks notice of the time, etc., it would seem to be plain that the sale must have been advertised at least 28 days, or four weeks of seven days each. However, it is a general rule that words must be construed in connection with their associates; so we must consider the construction which has been placed upon the words, "advertisement once a week for four weeks," in determining whether the notice referred to must extend for 28 days, or whether the insertion of the required advertisement for four consecutive weeks in advance of the sale day fixed by the advertisement is sufficient and must be held to be a compliance with the stipulation in the contract before us. In *Bird* v. *Burgsteiner,* 100 *Ga.* 486 (28 S. E. 219), the court had before it the question of what time was necessary to give notice of a sheriff's sale under execution, where the contention was made, as in the instant case, that the sheriff was proceeding to sell under an advertisement of less than four weeks. In passing upon this point, Mr. Justice Little, delivering the opinion of the court, said: "To determine this question, it will not be necessary to refer specifically to legislation on the subject prior to the act of 1891. Formerly thirty days advertisement was required; and later advertisements of such sales made once a week for four weeks met the requirements of the statute. But by an act approved October 21st, 1891 (Acts 1890-91, p. 241), which is a very general and comprehensive enactment on the subject, previous laws were changed. It is provided in this act that 'it shall be sufficient and legal to publish the same once a week for four weeks (that is, one insertion each week for each of the four weeks) immediately preceding the term or day when the order is to be granted or the sale is to take place; and the number of days between the date of the first publication and the term or day when the order is to be granted or the sale to take place, whether more or less than thirty days, shall not in any manner invalidate or render irregular the said notice, citation, advertisement, order, or sale.' . . In the case of *Boyd* v. *McFarlin,* 58 *Ga.* 208, this court, in construing section 3647 of the Code of 1873 (Civil Code [1895], § 5457), which required notice of sheriff's sales of land to be published weekly for four weeks, held, that the statute was not met by publication for a shorter period of time than twenty-eight days; in other words, that when the statute fixed the period at once a

week for four weeks, it meant to use the term 'week' as a period of time consisting of seven days, and that when there should be a publication weekly for four weeks, it meant once in each seven days, so as to give notice of such sales for twenty-eight days before the sale should take place. This was the law, as construed, at the time the act of 1891 was passed, and that act was intended to change existing law, so that if a notice of such sale should be made once a week for four weeks, such advertisement would be sufficient, without reference to the number of days which might so elapse. In ascertaining the legislative intent as expressed by the act, we are bound to conclude also that the week of seven days was not intended to be taken as the period in which one publication only of the notice must necessarily be made, because such was the statute as interpreted by the court at the time of the passage of the act; hence the act, in referring to the publication to be made once a week for four weeks, means a calendar week, and if notice shall be made on any day of a calendar week, that shall be counted as a publication for that week; and this construction would allow a notice to be made on a day within the week when the sale is to take place, because the act expressly excludes computation of days." It is strenuously urged by counsel for the plaintiff that section 6063 of the Code, which is taken from the act of 1891, just referred to, has no bearing in this case, for the reason that, this being a private power of sale, the parties had the right to make any provision with reference to the sale which might be necessary under the deed in question, without reference to the provisions of section 6063. There is much force in this argument. However, this court has construed words of doubtful meaning in powers of sale given by one individual to another in the light of the provisions of section 6063, and we are of the opinion that this was not done without good reason. In the absence of a very plain showing to the contrary, it must be assumed that two citizens dealing with each other as individuals would most naturally wish to follow the mode of procedure used in sales made by authority of law. They would naturally rely upon experience which resulted in the creation of the law, and rely upon the wisdom of the law. So we repeat, in cases of doubt as to the meaning of terms used in a private contract, it would generally be safe to assume that the parties intended to go

the ordinary path; and so in *Carter* v. *Copeland,* 147 *Ga.* 417 (94 S. E. 225), which concerned a power of sale contained in a mortgage which prescribed that the property should be advertised once a week for four weeks, this court applied the rule of section 6063 of the Code in construing the meaning of this private power of sale, and quoted from *Bird* v. *Burgsteiner,* supra, just as we have done. *Carter* v. *Copeland* was an action of ejectment, and the plaintiff sought to put in evidence a deed executed by Jones as attorney in fact for Blanton, conveying to the plaintiff the land in dispute. The defendant objected to the introduction of the deed, upon the ground that the power of sale required the land to be advertised once a week for four weeks, that such advertisement would have to be run for a period of twenty-eight days to comply with the condition of the power, and, the advertisement not having run for 28 days, that there was no sufficient compliance with the provisions of the power and the deed was void. The trial court sustained this objection, excluded the deed from evidence, and granted a nonsuit. The admissibility of the deed was the vital point in the case, and the only point considered by this court. The judgment of the trial court was reversed, this court holding: "Where a power of sale contained in a mortgage provided that the mortgagee should be authorized, upon the happening of a certain contingency, to 'take possession' of the land described in the mortgage, 'and, after advertising it' in a designated newspaper 'once a week for four weeks, to sell the same,' etc., the provision was complied with where the advertisement of sale was published in the designated paper once a week for four weeks immediately preceding the day when the sale took place, although the number of days between the date of the first publication and the day when the sale took place was less than twenty-eight days." This ruling was followed in *Proudfit* v. *Oliver,* 150 *Ga.* 707, 708 (105 S. E. 241), and the ruling that the provision in the power of sale "'as to notice, advertisement, etc., should be held to have the same meaning as it has in the acts relating to judicial sales which were in force at the time of the execution of the instrument containing the power,'" was quoted from *Carter* v. *Copeland,* supra. Chief Justice Fish then quoted from section 6063, that, as to publication "once a week for four weeks, it shall be sufficient and legal to publish the same once a week for four weeks (that is, one inser-

tion each week for each of the four weeks) immediately preceding the term or day when . . . the sale is to take place," etc., and construed the language to mean publication during four consecutive weeks prior to the sale, but held that the advertisement was invalid for the reason that there was not an advertisement published during the week immediately preceding the sale. In the case at bar the advertisement was published in the week immediately preceding the week of sale, and so the ruling in *Proudfit* v. *Oliver*, supra, is also controlling in this case. .

Counsel for the plaintiff concedes that *Carter* v. *Copeland* would be decisive upon the point but for the fact that the language used in the power of sale differentiates it from that case and other similar rulings. We can not agree with this contention. In arriving at the true meaning of words it is always permissible to transpose words of description. In the deed from Hembree to Williams the wording is "four weeks notice of the time, terms, and place of such sale, by advertising once a week in a newspaper published in said county." Suppose we transpose those same words so they will read, "by advertisement once a week in a newspaper published in said county, giving four weeks notice of the time, terms, and place of such sale." Under all the rulings of this court, an advertisement once a week in a newspaper published in said county, giving four weeks notice, would give four weeks notice if it was published four times, if the provisions of section 6063 have application to private powers of sale. Of course if the contention of counsel that section 6063 has no application to a private power of sale were correct, our ruling might be different, but on the contrary this court has held, as we have just pointed out, that powers of sale executed in individual transactions may be construed in the light of the provisions of section 6063, as to the length of time requisite for advertisement of such sales.

Having held that the sale of the property in question, so far as were concerned the advertisement of sale, the medium through which the advertisement was to be given, and the time and place when the sale could be held, complied with the requirements as contained in the deed with power of sale executed by Hembree to Williams, we come to the question as to whether there was a fair exercise of the power without regard to these matters. In other words, the controlling question in this case is whether the judge

in refusing an interlocutory injunction, in spite of the allegation in the petition before us (not to mention other allegations) that Williams was about to sell the property to an innocent purchaser, overlooked or disregarded the rights of Hembree and of all persons interested in the subject-matter to such an exercise of the power by Williams as would inure to their benefit from the sale being held under such circumstances as would not deter bidders or buyers from attempting to bid and buy. As to the matter of advertisement to which we have referred, it would make no difference if the property might have brought more money if advertised under different circumstances, because the advertisement was controlled by the contract, and Hembree and all persons claiming under him are bound by the terms of the security deed as to that. But we are of the opinion that the doctrine of lis pendens applies not only to Williams, the seller, but that it would also affect any possible bidders upon or buyers of the property. The latter probably would not want to "buy a lawsuit." Even the possibility of a lawsuit would tend to chill bidding and prevent buying. In *Peoples Bank* v. *Fidelity Loan & Trust Co.*, 155 *Ga.* 619 (117 S. E. 747), Mr. Justice Gilbert, delivering the opinion of the court, held: "On the hearing in this court the defendant in error moved to dismiss the bill of exceptions, on the ground that after the temporary injunction to restrain the sale of the land had been refused, and no exception taken to that judgment and no supersedeas granted, the defendant, the grantee in the first security deed, sold the land under the power of sale contained in its deed; and that the issues in the present case are therefore moot. The motion to dismiss the writ of error is denied on the ground that the petition prayed for equitable relief which, if granted in the suit, would avoid the sale sought to be enjoined, and the defendant company proceeded to sell at its peril. Compare *Porcher* v. *Pearsons-Taft Land Co.*, 154 *Ga.* 483 (114 S. E. 634)." And so in the case at bar, the judge of the superior court was not required to refuse an interlocutory injunction by reason of the fact that Williams had already exercised the power of sale, because the petition before him prayed for equitable relief which might avoid the sale, and the defendant Williams had proceeded to sell at his peril. "Decrees ordinarily bind only parties and their privies; but a pending suit is a general notice of an equity or claim to all the world from the time the petition is filed

and docketed; and if the same is duly prosecuted and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." Civil Code (1910), § 4533. But there is another and controlling reason upon which we base the opinion that the court erred in refusing an injunction in this case. The advertisement of sale of this property under the power contained in the security deed was run while there was pending a petition for injunction against any act on the part of Williams which would change the status of the property. It is true that at the time of the sale the court had not granted a restraining order, and only a rule nisi had been issued calling upon Williams to show cause why an interlocutory injunction should not issue and why a receiver should not be appointed. But the pendency of this petition was a threat and a menace to the title of any purchaser at the sale, and would naturally tend to cause the property to sell for less than its value. To use the language of Mr. Presiding Justice Beck, in *Henderson* v. *Willis,* 160 *Ga.* 638, 646 (128 S. E. 807) : "A sale like this one, under a power of sale, should not be so conducted as to injure those having such an interest in the property as there is evidence to show these plaintiffs had. Whether the evidence is in favor of the bona fides of the transactions between the plaintiffs and their grantor, and whether their title is tainted by fraud, are questions for a jury to settle. But there was evidence which would authorize a jury to find that the plaintiffs had a real interest in the property . . and such an interest as gave them the right to demand in a court of equity that the sale should not take place under such circumstances as would prevent bidders from offering the actual value of the property." We think that under the same principle the pending suit was notice to all the world, and that a sale in which no injunction restrained because it had been dissolved is void as not having been fairly conducted, then also a sale conducted with notice of the suit and an application for both an injunction and a receiver would likewise give to the plaintiff the "right to demand in a court of equity that the sale should not take place under such circumstances as would prevent bidders from offering the actual value of the property." Especially does it seem that this should be so when the original petition had not come on to be heard on interlocutory hearing on account of the congested condition of the docket of Fulton superior court; and especially, too, because at the sale held

under the power the improved property brought less than Williams had loaned for the pay-roll of the labor employed in improving the property. For the reasons stated we think the learned trial judge erred in refusing an interlocutory injunction as prayed. We express no opinion as to the propriety of the court's ruling as to the appointment of a receiver. There is no merit in the assignment of error based upon the refusal of the court to cancel the deed executed by virtue of the sale under the power, for the reason that this would have been a final judgment, and therefore premature at an interlocutory hearing. *Judgment reversed. All the Justices concur.*

ATKINSON, GILBERT, and HINES, JJ., concur in the judgment.

HINES, J. The power of sale requires that the grantee should first give four weeks notice of the time, terms, and place of sale, by advertising the sale once a week for four weeks in a newspaper published in the county. This requirement was not complied with by publishing the sale once a week for four weeks in a newspaper, when the interval of time between the publication of the first notice and the time of the sale did not amount to twenty-eight days. To give four weeks notice, the notice must be for the period of twenty-eight days between the time of publication of the first notice and the date of the sale. Under the power of sale notice was to be given by publishing it once a week for four weeks, but the length of time between the first publication of the notice and the sale could not be less than twenty-eight days. The first paragraph of the power fixes the length of time the notice should be given. The second prescribes the method of publishing the notice. So I dissent from the ruling in the first division of the decision; but 1 concur in the result. I am authorized to say that Mr. Justice Atkinson concurs herein.